IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 31 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| AGORA SYNDICATE, INC. § | |
| Plaintiff, § | |
| § | |
| v. § | C.A. No. B-96-193 |
| § | |
| AMFELS, INC. § | |
| Defendant. § | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

On this date came to be considered Plaintiff Agora Syndicate, Inc, ("Agora") Cross Motion for Summary Judgment against Defendant Amfels, Inc. ("Amfels").

## I. JURISDICTION

The Court has jurisdiction over this action under diversity jurisdiction. 28 U.S.C. § 1332. For the reasons stated herein, the Court GRANTS Defendant Amfels' Motion for Summary Judgment and DENIES Plaintiff Agora's Cross Motion for Summary Judgment.

## II. FACTS

Plaintiff Agora filed this action seeking a declaratory judgment that it owed no duty under Agora's commercial general liability insurance Policy No. DOL-201112 (the "Policy") to defend or indemnify Defendant Amfels in Cause No. 96-08-4185-D, Roman Jamarillo v. Amfels, in the 103rd District Court of Cameron County, Texas (the "Underlying Suit").

On March 9, 1995, Mr. Roman Jamarillo ("Jamarillo") was allegedly injured while on Amfels' premises. At the time, Jamarillo was employed by A.D. Welding, and A.D. Welding was working for Amfels pursuant to a Work Order dated January 2, 1995. This Work Order specified that A.D. Welding would provide personnel to work at Amfels. In return, A.D. Welding agreed to indemnify Amfels for claims brought by A.D. Welding employees against Amfels. See, Work Order, attached as Exhibit C to Pl.'s Cross Motion for Summary Judgment. As a result of his alleged injuries, Jamarillo filed suit alleging negligence and premises liability against Amfels in Cameron County District Court on August 13, 1996. See, Defendant's Motion

for Summary Judgment, Ex. A.

On October 29, 1996, Plaintiff Agora filed a Complaint for Declaratory Judgment as to its duty to indemnify and defend Defendant. Defendant responded on December 13, 1996. On June 24, 1997, Defendant moved for Summary Judgment as to Plaintiff's declaratory judgment action. Plaintiff responded by filing a Cross Motion for Summary Judgment on July 14, 1997. The Court now considers the cross motions for summary judgment.

### III. DISCUSSION

**1.    Summary Judgment Standard**

Rule 56 ( c ) provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. At 2552; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 2514 (1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825, 113 S.Ct. 82 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); Anderson, 477 U.S. at 255, 106 S.Ct. at 2514. Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. Celotex Corp., 477

U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S.Ct. at 2552.

2.  **Choice of Law**

In a diversity action, a federal court applies the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941). Therefore, Texas choice of law rules will determine which state's law applies to the issues in this case. Texas courts have adopted the Restatement of Conflicts (Second) most significant relationship test for choice of law analysis in situations where the parties have not agreed to the application of a particular state's law. Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984); Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex. 1979). Pursuant to that test, the Court will determine which state has the most significant relationship to the substantive issues of a particular case by comparing the contacts with each state and the relative weight of those contacts. Id. In a contract action, the following factors are considered: (1) place of contracting; (2) place of negotiation; (3) place of contract performance; (4) location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1980); Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 891 (5th Cir.), cert. denied, 502 U.S. 901 (1991); W.R. Grace & Co. v. Continental Cas. Co., 896 F.2d 865, 873-74 (5th Cir. 1990).

All parties to this action agree that under this test, Texas law applies. Amfels is a corporation with its principal place of business in Texas. The premiums were paid by Amfels in Texas, and the policy was delivered to Amfels in Texas. The Court finds that under the substantial relationship test, Texas law applies.

3.  **The Insurance Policy**

In determining whether the facts of any given case obligate the carrier to provide a defense to its insured, Texas courts follow the "eight corners" rule, which requires the court to look strictly to the allegations in the pleadings and the language of the policy. American

Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 153 (Tex.App.--Dallas 1990, writ dism'd w.o.j.). If the underlying lawsuit alleges facts that are within the scope of coverage, the insurer is ordinarily held to owe the insured a duty to defend. National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 140 (Tex. 1997). As long as the plaintiff has asserted a claim that potentially lies within the policy's coverage, the insurer has an obligation to defend the insured. Gulf States Ins. Co. v. Alamo Carriage Serv., 22 F.3d 88, 90 (5th Cir. 1994). Any doubt as to whether the complaint's allegations state a claim within the policy's coverage must be resolved in the insured's favor. Merchants, 939 S.W.2d at 140.

The rules of construction governing the interpretation of contracts generally also apply to the interpretation of insurance policies. Glover v. National Ins. Underwriters, 545 S.W.2d 755, 761 (Tex. 1977). Thus, the words used in an unambiguous insurance policy "are given their ordinary meaning unless the policy clearly gives them a different meaning." State Farm Lloyds v. Kessler, 932 S.W.2d 732, 736 (Tex.App.--Fort Worth 1996, writ requested). The burden of proving that allegations are excluded from coverage under the policy, moreover, rests on the insurer. Adamo v. State Farm Lloyds Co., 853 S.W.2d 673, 676 (Tex.App.--Houston [14th Dist.]), writ denied, 864 S.W.2d 491 (Tex. 1993), cert. denied, 511 U.S. 1053, 114 S.Ct. 1613 (1994). Using these legal principles, the Court will now address the parties' specific contentions.

Interpreting the plain language of the policy itself, the Court finds that Amfels is an additional insured under the policy. In the policy, A.D. Welding was listed as the named insured and Amfels was listed as an additional insured for "liability arising out of the operations of the named insured [A.D. Welding]." See, Policy, attached as Exhibit A to Pl.'s Cross Motion for Summary Judgment. Since A.D. Welding's operation as a business was to provide personnel to Amfels, the claim brought by Jamarillo, an A.D. Welding employee working on site at Amfels, arose from an operation of A.D. Welding. Agora bargained with A.D. Welding and chose to include Amfels as an additional insured.

In Saavedra v. Murphy Oil U.S.A., Inc., the Fifth Circuit held that an analogous

operations clause was sufficient to obligate the insurer to defend and indemnify an additional named insurer. 930 F.2d 1104 (5th Cir. 1991). Saavedra involved similar facts to the case at bar. Saavedra sued Murphy Oil U.S.A., Inc. ("Murphy") for injuries allegedly received while working on Murphy premises. At the time of the accident, Saavedra's employer, Lou-Con, Inc. ("Lou-Con"), was working under contract for Murphy. Murphy filed a third-party demand against Lou-Con and its insurance company for indemnification and defense costs. Id. at 1106. As part of the insurance contract, Murphy qualified as an additional insured, "but only with respect to operations performed by or for the named insured [Lou-Con]." Id. at 1110 (citing the policy, Article X.C.). The Fifth Circuit held that because the accident Saavedra sued upon was directly related to Lou-Con's work, the operations clause at issue was satisfied, and the policy extended insured status to Murphy. Id.

  Like Saavedra, the policy issued by Agora contains a valid operations clause. As drafted by Agora, there is language of limitation in this operations clause. This language insures that Agora will be liable only for those operations that involve A.D. Welding: its furnishing of workers for Amfels. Amfels is a labor leasing firm and A.D. Welding has no other operations besides providing personnel to Amfels. See, Pl.'s Cross Motion for Summary Judgment, Ex. B, Admission No.4). The claims raised by Jamarillo in the underlying suit are directly related to A.D. Welding's operations at Amfels. The underlying suit need not allege negligence by A.D. Welding for the suit to be covered under the operations clause and the policy itself. See also, Clark v. B & D Inspection Service, 896 F.2d 105, 106 (5th Cir. 1990).

  Therefore, based upon the policy's additional insured language alone, Plaintiff Agora has a duty to defend and indemnify Defendant Amfels in Cause No. 96-08-4185-D, Roman Jamarillo v. Amfels, in the 103rd District Court of Cameron County, Texas. The Court, however, will address Plaintiff's other contentions.

  The policy contains an exclusion for bodily injury (like that allegedly suffered by

Jamarillo).[1]  See, Policy, attached as Ex. A to Pl.'s Cross Motion for Summary Judgment, tab 5. However, the policy provides an exception to this exclusion which allows for coverage if there is a valid "insured contract":

> 2. Exclusions.
> This insurance does not apply to:
> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) Assumed in a contract or agreement that is an "insured contract."
> 8. "Insured contract" means:
> f. That part of any contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

See, Policy, attached as Ex. A to Pl.'s Cross Motion for Summary Judgment.

Agora alternatively argues that even if Amfels is an additional insured, the work order between A.D. Welding and Amfels is invalid as an insured contract because it fails to meet either the conspicuous test or the express negligence test under Texas law. The Court disagrees and holds that the work order between A.D. Welding and Amfels constitutes an insured contract under the terms of the policy. Therefore, Agora cannot rely upon the bodily injury exclusion provision in the policy to avoid its contractual obligations to defend and indemnify Amfels.

Agora claims that the work order is invalid because it is not conspicuous and it fails the express negligence test. The Court disagrees. First, Agora argues that the indemnity agreement must be conspicuous under Texas law. The test is "whether attention can reasonably be expected to be called to it." Tex.Bus. & Com.Code Ann. § 1.201, cmt. 10 (Vernon 1994). The work order between A.D. Welding and Amfels contains the following indemnity provision:

> 13. Indemnity
> The Contractor specifically warrants and intends that it shall be absolutely and solely responsible for and shall fully indemnify and hold harmless Amfels against all cases of accidents, injury, death, damages and losses to any person, property and things, including, but not limited to:

---

[1] Both parties agree that no claim is being made under the medical payments exclusion portion of the policy regarding Jamarillo's injuries. See, Pl.'s Cross Motion for Summary Judgment, Ex. E, paragraph 9.

    I) member of the public,
ii) persons employed by the contractors,
iii) Any person, being for any lawful purposes, in or about the Amfels premises or work sites,
iv) all plant and machinery whether ashore or afloat for work whether in the custody of Amfels or otherwise,
v) all tools, equipment and machinery brought into Amfels premises or sites for the performance of the Contractors job. The indemnity by contractor is specifically intended to cover all claims, demands, loss, costs, damage, liabilities and expenses whatsoever and howsoever arising out of any loss, damage, injury or death, irrespective of whether such loss, damage, injury or death is caused or contributed by the negligence, breach of duties and/or of Amfels, Its employees and agents and all its respective employees and agents.

See, Work Order, attached as Exhibit C to Pl.'s Cross Motion for Summary Judgment. Upon examination of the work order itself, the Court finds that the indemnity provision at issue does not fail any test for conspicuousness under Texas law. The language appeared on the "Terms and Conditions" page of a short, two-page work order and was not hidden under a misleading heading nor buried in a paragraph addressing dissimilar contractual issues. See, Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505 (Tex. 1993); Ensearch Corp. v. Parker, 794 S.W.2d 2 (Tex. 1990).[2]

    Additionally, Agora claims that the work order is not a valid indemnity agreement because it fails to meet the express negligence test. Under Texas law, before a court will require one party to indemnify another under a contract between the two, the contract must meet the "express negligence doctrine." Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987). That doctrine provides that a party seeking indemnity from the consequences of its own negligence must express that intent in specific terms within the four corners of the contract. Id. Here, the above language expresses the mutual intent of the parties that A.D. Welding will fully indemnify Amfels from claims brought against Amfels by A.D. Welding employees. See, Pl.'s Cross Motion for Summary Judgment, Ex. C. The Court finds that A.D. Welding assumed the

---

[2]Furthermore, the introductory clause of the "Terms and Conditions" page includes the following language that clarifies the scope of the work order and places the reader on notice that its conditions are to be applied broadly: "The following terms and conditions shall apply to all goods purchased and or services performed to the Work Order overleaf for Amfels, Inc....by the party to which this work Order is addressed..." See, Work Order, attached as Exhibit C to Pl.'s Cross Motion for Summary Judgment.

tort liability of Amfels by virtue of the indemnity provisions contained within the work order between A.D. Welding and Amfels. Since the work order meets the express negligence test set out in Ethyl and is conspicuous, then A.D. Welding is liable for Amfels' allegedly negligent acts, the work order is an "insured contract" within the meaning of the policy, the injury to employee exclusion is inapplicable, and the Agora commercial general liability insurance Policy No. DOL-201112 provides coverage for Defendant Amfels in Cause No. 96-08-4185-D, Roman Jamarillo v. Amfels, in the 103rd District Court of Cameron County, Texas.

When an insurance contract contains an "insured contract" provision, federal courts have historically enforced them when applicable. Contractual liability coverage provisions are specifically designed to provide coverage for indemnification actions. See, Musgrove v. Southland Corp., 898 F.2d 1041, 1044 (5th Cir. 1990). In this case, Agora agreed to provide coverage for third-party tort liabilities assumed in an "insured contract." The claims asserted by Jamarillo in the underlying suit are tort-based claims of negligence and premises liability. In conclusion, the eight corners of the complaint and the policy indicate that there was potential coverage for the claim asserted by Jamarillo against Amfels. As long as the allegations made in the underlying suit potentially state any cause of action within the policy provisions, however, the insurance carrier is obligated to defend and indemnify Amfels. See, Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965).

## IV. CONCLUSION

Accordingly, it is ORDERED, ADJUDGED, and DECREED, that the Defendant Amfels' Motion for Summary Judgment should be and is hereby GRANTED. Each party is to bear its own attorney fees and court costs. Defendant Amfels' request for sanctions is DENIED. Since the Court has GRANTED Summary Judgement for the Defendant, all other pending motions are hereby DISMISSED as moot.

Done at Brownsville, this 31st day of March, 1999.

_____
FILEMON B. VELA
United States District Judge